**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald W. Kamela and Sierra W. Kamela, | No. CV-11-1357-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| One West Bank FSB, et al., | |
| Defendant. | |

Pending before the Court is a Motion to Dismiss by Defendant OneWest Bank, FSB (Doc. 5), Plaintiffs' Motion to Strike OneWest Bank's Motion to Dismiss (Doc. 7), a Motion to Dismiss Party filed by MTC Financial, (Doc. 13), a second Motion to Dismiss Party filed by MTC Financial, (Doc. 19), a Motion to Strike Amended Complaint filed by OneWest Bank, (Doc. 20) and a Motion requiring signature receipt on all correspondence from counsel filed by Plaintiffs. (Doc. 21). For the reasons stated below, OneWest's and MTC's motions to dismiss are granted, Plaintiffs' Motion to Strike is denied, their Motion for signature receipt is construed as a change of address, granted in that regard, and otherwise denied, and MTC Financial's second motion to dismiss is dismissed as moot.

**BACKGROUND**

On August 14, 2007, Plaintiffs decided to renovate and sell their house, which was valued at $1,700,000 and located at 9429 East Adobe Drive in Scottsdale, Arizona ("the

1 Property"). (Doc. 1, Ex. 1 at 1–2). They borrowed $1,000,000 for the renovation, executing
2 a Deed of Trust ("DOT") which named American Mortgage Specialists, Inc. as the Lender,
3 Fidelity National Title as the Trustee, and Mortgage Electronic Registration Systems, Inc.
4 ("MERS") as the beneficiary and the nominee for the Lender. (Doc. 1, Ex. 1(G)).[1] As a
5 condition of obtaining the mortgage, Plaintiffs were asked to sign an agreement pledging not
6 to sell the house for at least one year; they agreed because they "did not expect the real estate
7 market to drop so dramatically within 1 year." (Doc. 1, Ex. 1 at 2). The loan was an
8 adjustable rate mortgage that initially had a negative amortization—Plaintiffs agreed to make
9 forty-three monthly payments at $3,108.04, followed by seventeen monthly payments at
10 $7,061.51, sixty payments at $7,659.94, and finally 240 monthly payments of $9,610.62.
11 (Doc 1, Ex. 1(C)). Because the loan contained no pre-payment penalty and Plaintiffs were
12 planning to sell their house, "they were not concerned about the increased payments." (Doc.
13 1, Ex. 1 at 2). Plaintiffs were soon notified that the Note contained an error, and that the first
14 forty-three payments should have been listed at $3,798.71. They initialed a copy of the Note
15 containing the corrected payment amount, but were never given a new set of disclosure
16 documents. (Doc. 1 at 3; Doc. 1, Ex. 1 (E)).

17 When the real estate market declined, Plaintiffs were unable to make their payments.
18 They sought a modification and were turned down. In 2009, they contacted a real estate agent
19 to sell the house, and found a buyer willing to pay $725,000 in a short sale. (Doc. 1 at 3). On

---

[1] The Court takes judicial notice of the DOT, the "Flex Pay Fixed/Adjustable Rate Note" ("the Note"), the Federal Truth-in-Lending Disclosure Statement, the Notice of Right to Cancel, the altered and initialed copy of the Note and Rider showing higher monthly payments, and the Truth In Lending Rescission Notice because they are "material which is properly submitted as part of the complaint." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). (Doc. 1, Exs. 1(G), 1(D), 1(C), 1(A), 1(E), 1(1)).

1 November 13, 2009, Plaintiffs called Defendant OneWest Bank, FSB ("OneWest")[2] only to
2 discover that an auction had been scheduled for November 16, 2009. (Doc. 1, Ex. 1).
3 Plaintiffs filed for Chapter 11 bankruptcy protection on November 16, and the automatic stay
4 prevented the sale from going forward. (Doc. 1, Ex. 1).

5 On January 31, 2011, Plaintiffs sent OneWest a Truth In Lending Rescission Notice
6 ("TILA Notice"). (Doc. 1, Ex. 1(1)). OneWest did not rescind the loan and foreclosure
7 proceedings progressed. On June 14, 2011, Plaintiffs filed this suit in Maricopa County
8 Superior Court, alleging 1) OneWest had failed to honor the Rescission Notice, 2) OneWest
9 had failed to prove standing or show a proper chain of title and therefore could not foreclose,
10 and 3) OneWest had failed to conform with an agreement with the Federal Deposit Insurance
11 Corporation ("FDIC") to offer loan modifications. (Doc. 1, Ex. 1). On June 15, 2011, the
12 Superior Court denied Plaintiffs' request for a TRO, and OneWest removed the matter to
13 federal court pursuant to 28 U.S.C. 1441(a) (2006).

14 OneWest moved to dismiss the case pursuant to Rule 12(b) on July 14. (Doc. 5).
15 Plaintiffs filed a document titled "Amended Complaint" on July 26, which described the
16 reasons they needed to amend the complaint; no amended complaint was attached to the
17 document. (Doc. 6). Plaintiffs moved to "Strike and Reject" the motion on July 27, stating
18 that because Defendants had not submitted a corporate disclosure statement pursuant to Rule
19 7.1, the motion should be struck and Plaintiffs should be awarded a judgment on the
20 pleadings. (Doc. 7). OneWest filed a corporate disclosure statement on July 28. On
21 September 6, 2009, Plaintiffs filed a "Second Amended Complaint," which OneWest moved
22 to strike on September 23. On September 20, 2011, MTC Financial, dba Trustee Corps, filed
23 a motion to dismiss party. On December 6, 2011, Plaintiffs submitted a motion "requiring

---

25 [2] Plaintiffs do not include documentation showing that OneWest held an interest in
26 the loan before the DOT was assigned in December of 2010, but state that they contacted
OneWest, suggesting that they had been informed that OneWest was the proper point of
27 contact for their loan.

28
- 3 -

signature receipt on all correspondence from counsel," stating that the property had been foreclosed upon, they were living in a temporary location, and they believed correspondence had not reached them. (Doc. 21). No mail sent to the Property was ever returned as undeliverable, and Plaintiffs never filed a notice of a name or address change, as required by LRCiv 83.3(d).

Meanwhile, on August 30, 2011, Plaintiffs filed a subsequent suit in Maricopa County Superior Court after the Property was foreclosed upon, alleging that the foreclosure, which took place on July 15, 2011, was wrongful. (CV-11-1930-JAT, Doc. 1 Ex. 1). Motions to dismiss were filed in that case in October, and in response to Plaintiffs' deadline requests pursuant to their relocation, they were granted until January 13, 2012 to respond. (CV-11-1930-JAT, Doc. 14).

## DISCUSSION

### I. Legal Standard

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). Nevertheless, to survive dismissal, a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task" in which a court relies upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. Instead, "where the well-pleaded facts do not permit the court to

1  infer more than the mere possibility of misconduct, the complaint has alleged—but it has not
2  'show[n]'—'that the pleader is entitled to relief." *Id.* at 1950 (quoting FED. R. CIV. P.
3  8(a)(2)).

## II.  Analysis

Plaintiffs ask that future filings be sent to them by a method that requires signature receipt, and that all correspondence "from August to the present date" be re-sent to their temporary address. Plaintiffs submitted a Response and a Second Amended Complaint on September 6, so they presumably received correspondence before that date. (Doc. 16–17). Since that time, the only motions filed have been MTC Financial's Motion to Dismiss Party and OneWest's Motion to Strike the Second Amended Complaint. (Doc. 19–20). The Court finds no reason to grant an extension to respond to either of these motions. Plaintiffs failed to notify the Court of their change of address, as required by LRCiv 83.3(d). "Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). Even before they moved, Plaintiffs missed filing deadlines and were granted extensions as a matter of course by the Court because of their pro se status. (Doc. 15). They have not offered good cause to excuse their failure to respond to the two motions. *See* LRCiv 7.2(c). The Court notes that their new address is in the motion, and to the extent that the motion provides notice of that new address, it is granted. In other respects it is denied.

Moreover, even were the Court inclined to excuse Plaintiffs' failure to respond, granting an extension would create delay without affecting the substance of this lawsuit. Plaintiffs could file no Response that would result in the denial of MTC Financial's motion. Although Plaintiffs name the law firm of Quarles & Brady, LLP and "TrusteeCorp" (in fact MTC Financial Inc., dba Trustee Corps) in the caption of their complaint, all three claims are lodged against OneWest. Since no counts are lodged against MTC Financial, they are not a

- 5 -

proper party to this matter.[3] Nor does the motion to strike the Second Amended Complaint require a response.[4] The complaint was not filed in a timely manner, but need not be struck. It includes no new claims, and merely adds additional factual support for the claims in the original complaint. The Court will consider the additionally pled facts it contains when evaluating the Motion to Dismiss, and to that extent, the motion to strike is denied without need of a response.

Plaintiffs' claim that they should be granted judgment on the pleadings because OneWest filed its corporate disclosure statement three days late is without merit. Plaintiffs made no allegation that OneWest's corporate parents had citizenship that destroyed diversity, and in fact made no motion to remand. The tardy corporate disclosure statement had no effect on any pending motion. Plaintiffs have also submitted documents after applicable deadlines, and as discussed above, the content of these documents will nevertheless be considered. Plaintiffs' Motion to Strike is therefore denied. Plaintiffs' three substantive claims will be discussed in turn.

### A.     Truth In Lending Act

The Truth in Lending Act (TILA) provides obligors with a right to rescind a loan within three business days as a matter of course, and within three years if "the information and forms required under this section or any other disclosures required under this part have not been delivered to obligor." 15 U.S.C. § 1635(f) (2006). Plaintiffs took out their loan on

---

[3] In the "Second Amended Complaint," certain improprieties are alleged against MTC Financial. These allegations, however, are contained within a claim arguing only that "OneWest Bank, FSB fails to prove standing, proper ownership of note, and has not shown a proper or legal chain of title." (Doc. 17 at 4). To the extent that the Court is considering some of the factual allegations of the "Second Amended Complaint," it does not construe these ancillary statements as claims against MTC Financial.

[4] It appears that since Plaintiffs did not attach an Amended Complaint to their initial motion to amend, the "Second Amended Complaint" is actually a First Amended Complaint. Nevertheless, the Court will refer to the document by its title in the docket for clarity.

- 6 -

1  August 14, 2007. (Doc. 1, Ex. 1(G)). They filed for bankruptcy protection on November 16,
2  2009, and submitted the Rescission Notice on January 31, 2011. (Doc. 1, Ex. 1). Plaintiffs
3  acknowledge that "January 31, 2011 is longer than the extended 3 year period from August
4  2007." (Doc. 1, Ex. 1 at 4). Nevertheless, they allege two grounds on which they argue the
5  deadline ought to be tolled. First, they claim that the bankruptcy stay tolls the TILA deadline,
6  and second, they claim that the three-year period should be read to exclude weekends and
7  holidays. (Doc. 1, Ex. 1 at 4; Doc. 16 at 4). These arguments will be addressed in turn.

8  TILA provides that if an obligor has not been provided with required documentation,
9  the "right of rescission shall expire three years after the date of consumation of the
10 transaction or upon the sale of the property."15 U.S.C. § 1635(f). The Supreme Court has
11 held that 15 U.S.C. § 1635(f)'s plain language operates not merely as a statute of limitations,
12 but that it "completely extinguishes the right of rescission at the end of the 3-year period."
13 *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998). Thus, although TILA's one-year
14 statute of limitations for a damages claim in 15 U.S.C. § 1640(e) can be equitably tolled,
15 *King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986), "[e]quitable tolling does not
16 apply to rescission claims under TILA." *Uy v. Wells Fargo Bank, N.A.*, 2011 WL 1235590,
17 at *6 (D. Haw. March 28, 2011).

18 The filing of a bankruptcy petition operates as a stay, preventing creditors from
19 initiating proceedings against the debtor during the reorganization process. 11 U.S.C. §
20 362(a) (2006). The automatic stay prevents actions by creditors against debtors; it is silent
21 regarding actions by debtors against creditors. Thus, when a lending institution has filed for
22 bankruptcy, and the stay prevents mortgagors from bringing a TILA damages claim, the one-
23 year statute of limitations may be tolled so that a claim may be filed when the stay is lifted.
24 *Velazquez v. GMAC Mortg. Corp.* 605 F. Supp. 2d 1049, 1061 (C.D. Cal. 2008). When the
25 party seeking bankruptcy protection is bringing the TILA claim, however, the automatic stay
26 is not applicable.

27 Plaintiffs point out that in *Thomas v. GMAC Residential Funding Corp.*, 309 B.R. 453
28

- 7 -

(Bankr. MD 2004), debtors in bankruptcy protection were granted an additional period in which to file a TILA rescission claim. *Thomas* did not involve the automatic stay, but instead section 108(b) of the Bankruptcy code, which provides an additional 60 days in which a person filing for bankruptcy "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act." 11 U.S.C. § 108(b). *Thomas* stands for the proposition that the Supreme Court's holding in *Beach* does not render section 108(b) inapplicable to TILA rescission claims. *Thomas*, 309 B.R. at 455. Nevertheless, section 108 is of no help to Plaintiffs: it provides only sixty additional days from the order for relief, and even then only if those sixty days extend the original deadline. 11 U.S.C. § 108(b)(1–2). Granting sixty additional days from November 16, 2009 would provide Plaintiffs only until January of 2010, and would not extend the TILA deadline of August 14, 2010. In no event would it serve to render their January 31, 2011 notice timely.

Plaintiffs' second argument, that the three-year period in 15 U.S.C. § 1635(f) excludes weekends and holidays, is likewise meritless. Plaintiffs include a portion of the U.S. Code identifying legal public holidays, but no citation to a portion of TILA that suggests the three-year rescission period excludes these holidays. 5 U.S.C. § 6103. Although the deadline for TILA rescission for those who have received their TILA materials is "the third business day following the consummation of the transaction," the right to rescind for those who did not receive the required forms "shall expire three years after the date of consummation of the transaction." 15 U.S.C. § 1635(a, f). The commonly understood term "business day" excludes weekends and holidays, while the equally commonly understood term "year" does not. Plaintiffs may not bring a TILA claim because their Notice of Rescission was filed after their right was "completely extinguishe[d]." *Beach*, 523 U.S. at 412.

### B.   MERS allegations

Plaintiffs next claim that OneWest did not have standing to foreclose upon their home because they could not show a proper chain of title or proper ownership of the promissory note. (Doc. 17 at 5–8). In particular, they claim that people who signed various assignments

1  on behalf of MERS were in fact bank officers, and therefore were "robo-signers," and the
2  assignments of the deed were not valid. (Doc. 17 at 5–8). The Ninth Circuit has recently
3  upheld the validity of the MERS system, noting that when MERS acts as a beneficiary and
4  subsequently assigns a deed, the deed is not split from the note and rendered unenforceable.
5  As the court wrote, "the notes and deeds are not irreparably split: the split only renders the
6  mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not
7  agents of the lenders." *Cervantes et al. v. Countrywide et al.*,659 F.3d 1034, 1044 (9th Cir.
8  2011). Moreover, like the plaintiffs in *Cervantes*, Plaintiffs here "do not support this bare
9  assertion with any explanation as to how the operation of the MERS system actually stymied
10 their efforts to identify and contact the relevant party to modify their loans." *Cervantes*, 659
11 F.3d at 1041. Plaintiffs acknowledge that they were able to contact their lender and request
12 a modification; they are merely unsatisfied that their request was denied.

13 Finally, the fact that officers at banks are simultaneously officers of MERS does not
14 render them "robo-signers." As one court has explained, it is common for a person to be
15 employed by a financial institution and at the same time be a MERS officer:

> MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS. This procedure allows the member that owns the indebtedness to assign or foreclose the mortgage loan in the name of MERS, eliminating the need to either work through a third party or to execute an assignment of the security instrument from MERS back to the member. *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 491 (Minn. 2009).

21 In other words, " MERS relies on its members to have someone on their own staff become
22 a MERS officer with the authority to sign documents on behalf of MERS." *Cervantes*, 659
23 F.3d at 1040 (citing Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS),*
24 *Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L.
25 177, 178 (2010)).

26 Beyond the allegations specific to MERS, Count Two is a version of the "show me
27 the note" theory. In Arizona, however, "district courts have routinely held that [the] 'show

1  me the note' argument lacks merit." *Diessner v. MERS*, 618 F. Supp. 2d 1184, 1187 (D. Ariz.
2  2009) (internal citation omitted, collecting cases). In the ongoing multi-district litigation
3  challenging MERS, Judge Teilborg has dismissed the Consolidated Amended Complaint,
4  holding that a trustee "holds legal title to the secured interests and is the beneficiary or
5  lienholder of record, as the nominee or agent for Plaintiffs' lenders and the lenders'
6  successors and assigns."*In Re Mortgage Electronic Registration Systems (MERS) Litigation*,
7  2:09-md-02119-JAT (Oct. 3, 2011).

### C. Failure to Conform to the FDIC agreement

Plaintiffs assert that a condition of OneWest's purchase of IndyMac was that OneWest "would agree to offer loan modifications to troubled homeowners," and that by failing to offer them a modification OneWest reneged upon that agreement. (Doc. 1, Ex. 1). They do not state that OneWest made any particular promise to offer them a modification specifically. Plaintiffs state only that they "believe that [OneWest] had a duty to follow the FDIC agreement to offer loan modification[s] to troubled homeowners." (Doc. 17 at 8). They acknowledge that OneWest "had a duty to help but not a legal obligation to do so." (*Id.*). Plaintiffs claim further that they know that they "do not have a legal right to demand a loan modification and that the courts cannot force banks to provide loan modifications." (*Id.*). They do not allege that OneWest ever agreed to offer them a modification, or violated any agreement particular to them. Their allegation does not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' third claim is therefore dismissed.

### CONCLUSION

Plaintiffs took out a large loan in order to renovate and sell their already valuable house. They acknowledge that they understood the terms of the loan, and even agreed to an increase in the monthly payments when the bank notified them after closing. They did not concern themselves with the fact that their loan payments grew dramatically over the course of the loan, because they expected to quickly sell their house and profit from the transaction

- 10 -

based upon a real estate market which "at the time was booming." (Doc. 1, Ex. 1). In essence, Plaintiffs placed a large bet on the continued expansion of the residential real estate market. They lost.

Plaintiffs are now understandably disappointed with the outcome, but have not stated a claim against OneWest that can survive a motion to dismiss. Their TILA Notice was sent after their right to rescind had expired. The Ninth Circuit has approved of the components of MERS to which Plaintiffs object, and the "show me the note" argument has long been rejected. Plaintiffs themselves acknowledge that OneWest had no legal obligation to modify their loan. Defendants' motion to dismiss is therefore granted.

**IT IS HEREBY ORDERED:**

1. Defendant OneWest Bank's Motion to Dismiss (Doc. 5) is **granted**.
2. Plaintiffs' Motion to Strike Defendant's Motion to Dismiss (Doc. 7) is **denied**.
3. Defendant MTC Financial's Motion to Dismiss (Doc. 13) is **granted**.
4. Defendant MTC Financial's Motion to Dismiss Party (Doc. 19) is **dismissed as moot**.
5. Defendant OneWest Bank's Motion to Strike (Doc. 20) is **denied**.
6. Plaintiff's Motion to Require Signature Receipt (Doc. 21) is **granted in part and denied in part**.
7. The Clerk of Court is instructed to mail a copy of this Order to Plaintiffs at their new address:

   Donald and Sierra Kamela
   34714 N. 27th Ave
   Phoenix, AZ 85086

8. The Clerk of Court is otherwise instructed to **terminate this lawsuit**.

DATED this 19th day of December, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 11 -